IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

UNITED STATES OF AMERICA

v.

NO.  2:26-CR-005-Z (01)

JOHN PAUL REYES, SR. (1)
    a/k/a "Bosco"

## FACTUAL RESUME

In support of John Paul Reyes, Sr.'s, also known as "Bosco", plea of guilty to the offense in Count One of the superseding information, Reyes, Sr., the defendant, Eric Vickers, the defendant's attorney, and the United States of America (the government) stipulate and agree to the following:

## ELEMENTS OF THE OFFENSE

To prove the offense alleged in Count One of the superseding information, charging a violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C), that is, Possession with Intent to Distribute Methamphetamine, the government must prove each of the following elements beyond a reasonable doubt:[1]

*First.*    That the defendant knowingly possessed a controlled substance;

*Second.*    That the substance was in fact methamphetamine; and

*Third.*    That the defendant possessed the substance with the intent to distribute it.

To "possess with intent to distribute" simply means to possess with intent to deliver or transfer possession of a controlled substance to another person, with or without any financial interest in the transaction.

---

[1] Fifth Circuit Pattern Jury Instruction 2.95A (5th Cir. 2024).

**John Paul Reyes, Sr.**
**Factual Resume—Page 1**

## STIPULATED FACTS

1.      John Paul Reyes, Sr., admits and agrees that on January 5, 2026, in the Amarillo Division of the Northern District of Texas, and elsewhere, he did knowingly or intentionally possess with intent to distribute a mixture or substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C).

2.      On January 2, 2026, Amarillo Police Department (APD) officers utilized a cooperating defendant (CD) to contact John Paul Reyes, Sr., to arrange for the purchase of methamphetamine from Reyes.  On that day, the CD made recorded calls to Reyes to discuss the purchase of two pounds of methamphetamine in the near future.  Reyes explained that there was already methamphetamine in Amarillo, which had been there since the week of Christmas.  Reyes stated that he packaged the methamphetamine himself.  Reyes stated that the price per pound would be $2,500.

3.      On January 5, 2026, APD officers recorded phone calls between the CD and Reyes.  The CD placed phone calls to Reyes to set up the purchase of two pounds of methamphetamine.  During the calls, Reyes told the CD that Kevyn Andre Smith would bring the methamphetamine to the CD.  Reyes then contacted the CD via the Signal Chat App.  Reyes told the CD that Smith was not answering his phone, but he had someone else to complete the deal.  A review of phone data showed that Reyes, Smith, and Anthony Maestas Diaz were all in telephone contact during this time period.

4.      Officers conducted surveillance at Reyes's residence, located at 2001 Living Water, Amarillo, Texas.  During surveillance, officers observed Diaz arrive at the

John Paul Reyes, Sr.
Factual Resume—Page 2

residence. Smith arrived at the residence shortly after Diaz. Smith met with Diaz, and both entered the residence for a short time. Both Diaz and Smith left the residence in separate vehicles. Officers pulled both vehicles over to further the investigation.

5.    Officers conducted an interview with Smith. During the interview, Smith admitted to selling more than 40 pounds of methamphetamine on behalf of Reyes. Smith stated that there were several pounds of methamphetamine inside a vehicle in the garage of Reyes's residence. Smith identified Reyes through a photograph. Smith also identified Diaz as the person he met with at the residence. Smith stated that Diaz goes by the nickname, "Tone." Smith had Diaz's phone number saved in his phone as "Tone." Smith identified two drug ledgers saved in his cellphone. In the ledgers, several co-conspirators were listed along with the amount of methamphetamine those individuals received from Reyes through Smith. According to the ledger, Diaz, listed as "Tone," received 12 pounds of methamphetamine from Reyes through Smith.

6.    Officers also conducted an interview with Diaz. During the interview, Diaz admitted to being at the Living Water residence. Diaz claimed that he was there to water the grass for "Paul." Diaz admitted to knowing John Paul Reyes, Sr., and Smith, stating that they all were friends.

7.    APD officers obtained a search warrant for Reyes's residence on Living Water. As officers approached the Living Water residence to execute the warrant, Reyes's voice could be heard through the surveillance system telling agents to use the front door, and that no one was inside the residence.

**John Paul Reyes, Sr.**
**Factual Resume—Page 3**

8.    During a search of the residence, agents located approximately 5.93 kilograms of methamphetamine in the trunk of a vehicle inside the garage.  The APD Crime Scene Unit responded to the scene to process the vehicle for fingerprints.  Reyes's fingerprint was found on the driver's door window of the vehicle.  A fingerprint belonging to Diaz was located on the passenger side of the vehicle.

9.    The suspected methamphetamine seized from Smith's vehicle on January 5, 2026, was sent to the DEA South Central Laboratory.  The DEA Laboratory confirmed that the substance was, in fact, methamphetamine, a Schedule II controlled substance. The substance had a total net weight of 892.1 grams and a purity level of approximately 97 percent.  This quantity of methamphetamine is only consistent with distribution, not someone's personal use.

10.    A sample of the suspected methamphetamine seized from Reyes's residence on January 5, 2026, was sent to the DEA South Central Laboratory.  The DEA Laboratory confirmed that the substance was, in fact, methamphetamine, a Schedule II controlled substance.  The substance had a total net weight of 1,333.4 grams and a purity level of approximately 100 percent.  This quantity of methamphetamine is also only consistent with distribution, not someone's personal use.

11.    Reyes, Sr. admits that on January 5, 2026, he knowingly possessed with intent to distribute a mixture or substance containing a detectable amount of methamphetamine, a Schedule II controlled substance.

12.    The defendant agrees that the defendant committed all the essential elements of the offense.  This factual resume is not intended to be a complete accounting

John Paul Reyes, Sr.
Factual Resume—Page 4

of all the facts and events related to the offense charged in this case.  The limited purpose

of this statement of facts is to demonstrate that a factual basis exists to support the

defendant's guilty plea to Count One of the superseding information.

AGREED TO AND STIPULATED on this 20ᵗʰ day of _____May_____, 2026.

RYAN RAYBOULD
UNITED STATES ATTORNEY


_____
John Paul Reyes, Sr.
Defendant


_____
ANNA MARIE BELL
Assistant United States Attorney
New Mexico State Bar Number 12501
500 South Taylor Street, Suite 300
Amarillo, Texas 79101-2446
Tel:  806-324-2356
Fax:  806-324-2399
Email:  anna.bell@usdoj.gov


_____
Eric Vickers
Attorney for Defendant


**John Paul Reyes, Sr.**
**Factual Resume—Page 5**