IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

UNITED STATES OF AMERICA

v.

NO.  2:26-CR-005-Z (04)

RICHARD DWAYNE DRAPER (04)

## FACTUAL RESUME

In support of Richard Dwayne Draper's plea of guilty to the offense in Count One of the superseding indictment, Draper, the defendant, Slater Elza, the defendant's attorney, and the United States of America (the government) stipulate and agree to the following:

## ELEMENTS OF THE OFFENSE

To prove the offense alleged in Count One of the superseding indictment, charging a violation of 21 U.S.C. § 846, that is, Conspiracy to Distribute and Possess with Intent to Distribute 500 Grams or More of Methamphetamine, the government must prove each of the following elements beyond a reasonable doubt:[1]

> *First.*    That two or more persons, directly or indirectly, reached an agreement to distribute or possess with intent to distribute methamphetamine;
>
> *Second.*  That the defendant knew of the unlawful purpose of the agreement;
>
> *Third.*    That the defendant joined in the agreement willfully, that is, with the intent to further its unlawful purpose;
>
> *Fourth.*  That the overall scope of the conspiracy involved at least 500 grams of a mixture or substance containing a detectable amount of

---

[1] Fifth Circuit Pattern Jury Instruction 2.97 (5th Cir. 2024).

**Richard Dwayne Draper**
**Factual Resume—Page 1**

methamphetamine;

*Fifth.*      That the defendant knew or reasonably should have known that the scope of the conspiracy involved at least 500 grams of a mixture or substance containing a detectable amount of methamphetamine.

A "conspiracy" is an agreement between two or more persons to join together to accomplish some unlawful purpose. It is a kind of "partnership in crime" in which each member becomes the agent of every other member.

.

One may become a member of a conspiracy without knowing all the details of the unlawful scheme or the identities of all the other alleged conspirators. If a defendant understands the unlawful nature of a plan or scheme and knowingly and intentionally joins in that plan or scheme on one occasion, that is sufficient to convict him or her for conspiracy even though the defendant had not participated before and even though the defendant played only a minor part.

The government does not need to prove that the alleged conspirators entered into any formal agreement, or that they directly stated between themselves all the details of the scheme. Likewise, the government does not need to prove that all of the details of the scheme alleged in the indictment were actually agreed upon or carried out. Nor must it prove that all of the persons alleged to have been members of the conspiracy were such, or that the alleged conspirators actually succeeded in accomplishing their unlawful objectives.

Mere presence at the scene of an event, even with knowledge that a crime is being committed, or the mere fact that certain persons may have associated with each other and may have assembled together and discussed common aims and interests, does not necessarily establish proof of the existence of a conspiracy. Also, a person who has no knowledge of a conspiracy, but who happens to act in a way which advances some purpose of a conspiracy, does not thereby become a conspirator.

To prove the offense of distribution or possession with intent to distribute 500 grams of more of methamphetamine, the government must prove each of the following elements beyond a reasonable doubt:[2]

*First.*      That the defendant knowingly distributed or possessed a controlled substance;

---

[2] Fifth Circuit Pattern Jury Instruction 2.95 (5th Cir. 2024); *United States v. Ambriz*, 727 F.3d 378, 382-84 (5th Cir. 2013).

**Richard Dwayne Draper**
**Factual Resume—Page 2**

*Second.*    That the substance was in fact methamphetamine;

*Third.*    That the defendant distributed the substance or possessed the substance with the intent to distribute it; and

*Fourth.*    That the quantity of the substance was at least 500 grams of a mixture or substance containing a detectable amount of methamphetamine.

To "possess with intent to distribute" simply means to possess with intent to deliver or transfer possession of a controlled substance to another person, with or without any financial interest in the transaction.

## STIPULATED FACTS

1.    Richard Dwayne Draper admits and agrees that beginning on or about a date unknown and continuing until on or about February 26, 2026, in the Amarillo Division of the Northern District of Texas, and elsewhere, he did knowingly and intentionally combine, conspire, confederate, or agree with Bryan Alan Draper and persons known and unknown to commit an offense against the United States, that is, to knowingly and intentionally distribute or possess with intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A)(viii), all in violation of Title 21, United States Code, Section 846.

2.    On October 24, 2025, Amarillo Police Department (APD) officers utilized a confidential source (CS) to contact Bryan Draper to discuss the purchase of methamphetamine. The CS made several recorded calls to B. Draper. During the calls, B. Draper agreed to sell a quarter pound of methamphetamine to the CS for $1,200.

3.      B. Draper agreed to meet the CS at B. Draper's residence, located at 3007 NE 26th Avenue, Amarillo, Texas.  The CS arrived at B. Draper's residence and was allowed inside.  B. Draper advised the CS that he does not keep methamphetamine at his residence.  B. Draper told the CS to go to his brother's residence to pick up the methamphetamine.  B. Draper's brother, Richard Dwayne Draper, resides at 1938 S. Marrs Street, Amarillo, Texas.  B. Draper placed a call to R. Draper and told him, "let me know when you're home so mom can come by and get a four pack."  "A four pack" is commonly used slang for four ounces of methamphetamine, which equals a quarter pound.

4.      An undercover officer (UC) drove the CS to R. Draper's residence located at 1938 S. Marrs, Amarillo, Texas.  The CS was allowed inside the residence where the CS met with R. Draper.  The CS paid R. Draper $1,200 in exchange for a quarter pound of methamphetamine.  The CS turned the methamphetamine over to UC after leaving the residence.

5.      On November 12, 2025, APD officers utilized a CS to contact B. Draper to purchase a quarter pound of methamphetamine.  During a recorded call, B. Draper agreed to sell the CS a "four pack" of methamphetamine.  The CS traveled to B. Draper's residence and met with B. Draper in the driveway of the residence.  The CS paid B. Draper $1,200 for the methamphetamine.  The CS then traveled to R. Draper's residence to pick up the methamphetamine.  A female allowed the CS into R. Draper's residence. R. Draper entered the residence from the backyard and he handed the CS a plastic

grocery bag containing the methamphetamine. R. Draper apologized for the grocery bag packaging. The CS left the residence and turned over the methamphetamine to the UC.

6.    On February 10, 2026, APD officers arrested Richard Draper for a federal warrant. Officers conducted an interview with R. Draper. An officer read R. Draper his *Miranda* warnings. R. Draper waived his rights and agreed to make a statement. During the interview, R. Draper admitted that B. Draper would bring him methamphetamine to sell. R. Draper admitted that he sold between four and five pounds of methamphetamine over the last five to six months. R. Draper stated that he sold to approximately 10 customers. R. Draper explained that B. Draper would set the prices and send customers to R. Draper to complete the drug sale. R. Draper admitted to storing the methamphetamine in a storage unit in the backyard of his residence, located at 1938 S. Marrs, Amarillo, Texas.

7.    The suspected methamphetamine purchased by the CS on October 24, 2025, was sent to the DEA South Central Laboratory. The DEA Laboratory confirmed that the substance was, in fact, methamphetamine, a Schedule II controlled substance. The substance had a total net weight of 111.9 grams and a purity level of approximately 99 percent.

8.    The suspected methamphetamine purchased by the CS on November 12, 2025, was sent to the DEA South Central Laboratory. The DEA Laboratory confirmed that the substance was, in fact, methamphetamine, a Schedule II controlled substance. The substance had a total net weight of 111.73 grams and a purity level of approximately 98 percent.

9.     R. Draper admits that he, B. Draper, and others made an agreement to commit the crime of distribution or possession with intent to distribute 500 grams or more of methamphetamine, as charged in the superseding indictment.  Draper admits that he knew the purpose of the agreement and joined in it willfully, that is, with the intent to further the unlawful purpose.  Draper admits that the overall scope of the conspiracy involved at least 500 grams of a mixture or substance containing a detectable amount of methamphetamine and that he knew or reasonably should have known that the scope of the conspiracy involved at least 500 grams of a mixture or substance containing a detectable amount of methamphetamine.

10.     The defendant agrees that the defendant committed all the essential elements of the offense.  This factual resume is not intended to be a complete accounting of all the facts and events related to the offense charged in this case.  The limited purpose of this statement of facts is to demonstrate that a factual basis exists to support the defendant's guilty plea to Count One of the superseding indictment.

AGREED TO AND STIPULATED on this 2nd day of _____June_____, 2026.

RYAN RAYBOULD
UNITED STATES ATTORNEY

_____
Richard Dwayne Draper
Defendant

_____
Slater Elza
Attorney for Defendant

_____
ANNA MARIE BELL
Assistant United States Attorney
New Mexico State Bar Number 12501
500 South Taylor Street, Suite 300
Amarillo, Texas 79101-2446
Tel:  806-324-2356
Fax:  806-324-2399
Email:  anna.bell@usdoj.gov

**Richard Dwayne Draper**
**Factual Resume—Page 6**