IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

UNITED STATES OF AMERICA

v.

ANTHONY MAESTAS DIAZ (06)

NO. 2:26-CR-005-Z (06)

## FACTUAL RESUME

In support of Anthony Maestas Diaz's plea of guilty to the offense in Count One

of the superseding indictment, Diaz, the defendant, David Sloan, the defendant's

attorney, and the United States of America (the government) stipulate and agree to the

following:

## ELEMENTS OF THE OFFENSE

To prove the offense alleged in Count One of the superseding indictment, charging

a violation of 21 U.S.C. § 846, that is, Conspiracy to Distribute and Possess with Intent to

Distribute 500 Grams or More of Methamphetamine, the government must prove each of

the following elements beyond a reasonable doubt:[1]

*First.*    That two or more persons, directly or indirectly, reached an agreement to distribute or possess with intent to distribute methamphetamine;

*Second.*    That the defendant knew of the unlawful purpose of the agreement;

*Third.*    That the defendant joined in the agreement willfully, that is, with the intent to further its unlawful purpose;

*Fourth.*    That the overall scope of the conspiracy involved at least 500 grams of a mixture or substance containing a detectable amount of

---

[1] Fifth Circuit Pattern Jury Instruction 2.97 (5th Cir. 2024).

Anthony Maestas Diaz
Factual Resume—Page 1

methamphetamine;

Fifth.    That the defendant knew or reasonably should have known that the scope of the conspiracy involved at least 500 grams of a mixture or substance containing a detectable amount of methamphetamine.

A "conspiracy" is an agreement between two or more persons to join together to accomplish some unlawful purpose. It is a kind of "partnership in crime" in which each member becomes the agent of every other member.

One may become a member of a conspiracy without knowing all the details of the unlawful scheme or the identities of all the other alleged conspirators. If a defendant understands the unlawful nature of a plan or scheme and knowingly and intentionally joins in that plan or scheme on one occasion, that is sufficient to convict him or her for conspiracy even though the defendant had not participated before and even though the defendant played only a minor part.

The government does not need to prove that the alleged conspirators entered into any formal agreement, or that they directly stated between themselves all the details of the scheme. Likewise, the government does not need to prove that all of the details of the scheme alleged in the indictment were actually agreed upon or carried out. Nor must it prove that all of the persons alleged to have been members of the conspiracy were such, or that the alleged conspirators actually succeeded in accomplishing their unlawful objectives.

Mere presence at the scene of an event, even with knowledge that a crime is being committed, or the mere fact that certain persons may have associated with each other and may have assembled together and discussed common aims and interests, does not necessarily establish proof of the existence of a conspiracy. Also, a person who has no knowledge of a conspiracy, but who happens to act in a way which advances some purpose of a conspiracy, does not thereby become a conspirator.

To prove the offense of distribution or possession with intent to distribute 500 grams of more of methamphetamine, the government must prove each of the following elements beyond a reasonable doubt:[2]

First.    That the defendant knowingly distributed or possessed a controlled substance;

---

[2] Fifth Circuit Pattern Jury Instruction 2.95 (5th Cir. 2024); *United States v. Ambriz*, 727 F.3d 378, 382-84 (5th Cir. 2013).

Anthony Maestas Diaz
Factual Resume—Page 2

*Second.*     That the substance was in fact methamphetamine;

*Third.*      That the defendant distributed the substance or possessed the substance with the intent to distribute it; and

*Fourth.*     That the quantity of the substance was at least 500 grams of a mixture or substance containing a detectable amount of methamphetamine.

To "possess with intent to distribute" simply means to possess with intent to deliver or transfer possession of a controlled substance to another person, with or without any financial interest in the transaction.

## STIPULATED FACTS

1.     Anthony Maestas Diaz admits and agrees that beginning on or about a date unknown and continuing until on or about February 26, 2026, in the Amarillo Division of the Northern District of Texas, and elsewhere, he did knowingly and intentionally combine, conspire, confederate, or agree with John Paul Reyes, Sr., and persons known and unknown to commit an offense against the United States, that is, to knowingly and intentionally distribute or possess with intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A)(viii), all in violation of Title 21, United States Code, Section 846.

2.     On January 2, 2026, Amarillo Police Department (APD) officers utilized a cooperating defendant (CD) to contact John Paul Reyes, Sr., to arrange for the purchase of methamphetamine from Reyes. On that day, the CD made recorded calls to Reyes to discuss the purchase of two pounds soon. Reyes explained that there was already methamphetamine in Amarillo, which had been there since the week of Christmas.

Anthony Maestas Diaz
Factual Resume—Page 3

Reyes stated that he packaged the methamphetamine himself. Reyes stated that the price per pound would be $2,500.

3.      On January 5, 2026, APD officers recorded phone calls between the CD and Reyes. The CD placed phone calls to Reyes to set up the purchase of two pounds of methamphetamine. During the calls, Reyes told the CD that Kevyn Andre Smith would bring the methamphetamine to the CD. Reyes then contacted the CD via the Signal Chat App. Reyes told the CS that Smith was not answering his phone, but he had someone else to facilitate the deal. A review of phone data showed that Reyes, Smith, and Anthony Maestas Diaz were all in telephone contact during this time period.

4.      Officers conducted surveillance at Reyes's residence, located at 2001 Living Water, Amarillo, Texas. During surveillance, officers observed Diaz arrive at the residence. Smith arrived at the residence shortly after Diaz. Smith met with Diaz, and both entered the residence for a short time. Both Diaz and Smith left the residence in separate vehicles. Officers pulled over both vehicles to further the investigation.

5.      Officers conducted an interview with Smith. During the interview, Smith admitted to selling more than 40 pounds of methamphetamine on behalf of Reyes. Smith stated that there were several pounds of methamphetamine inside a vehicle in the garage of Reyes's residence. Smith identified Reyes through a photograph. Smith also identified Diaz as the person he met with at the residence. Smith stated that Diaz goes by the nickname, "Tone." Smith had Diaz's phone number saved in his phone as "Tone." Smith identified two drug ledgers saved in his cellphone. In the ledgers, several co-conspirators were listed along with the amount of methamphetamine those individuals

Anthony Maestas Diaz
Factual Resume—Page 4

received from Reyes via Smith. According to the ledger, Diaz, listed as "Tone," received 12 pounds of methamphetamine from Reyes through Smith.

6.      Officers also conducted an interview with Diaz. An officer read Diaz his *Miranda* warnings. Diaz waived his rights and agreed to make a statement. During the interview, Diaz admitted to being at the Living Water residence. Diaz claimed that he was there to water the grass for "Paul." Diaz admitted to knowing John Paul Reyes, Sr., and Smith, stating that they all were friends.

7.      APD officers obtained a search warrant for Reyes's residence on Living Water. As officers approached the Living Water residence to execute the warrant, Reyes's voice could be heard through the surveillance system telling agents to use the front door, and that no one was inside the residence.

8.      During a search of the residence, agents located approximately 5.93 kilograms of methamphetamine in the trunk of a vehicle inside the garage. The APD Crime Scene Unit responded to the scene to process the vehicle for fingerprints. Reyes's fingerprint was found on the driver's door window of the vehicle. A fingerprint belonging to Diaz was located on the passenger side of the vehicle.

9.      The suspected methamphetamine seized from Smith's vehicle on January 5, 2026, was sent to the DEA South Central Laboratory. The DEA Laboratory confirmed that the substance was, in fact, methamphetamine, a Schedule II controlled substance. The substance had a total net weight of 892.1 grams and a purity level of approximately 97 percent.

10. A sample of the suspected methamphetamine seized from Reyes' residence on January 5, 2026, was sent to the DEA South Central Laboratory. The DEA Laboratory confirmed that the substance was, in fact, methamphetamine, a Schedule II controlled substance. The substance had a total net weight of 1,333.4 grams and a purity level of approximately 100 percent.

11. Diaz admits that he, Kevyn Andre Smith, John Paul Reyes, Sr., and others made an agreement to commit the crime of distribution or possession with intent to distribute 500 grams or more of methamphetamine, as charged in the superseding indictment. Diaz admits that he knew the purpose of the agreement and joined in it willfully, that is, with the intent to further the unlawful purpose. Diaz admits that the overall scope of the conspiracy involved at least 500 grams of a mixture or substance containing a detectable amount of methamphetamine and that he knew or reasonably should have known that the scope of the conspiracy involved at least 500 grams of a mixture or substance containing a detectable amount of methamphetamine.

12. The defendant agrees that the defendant committed all the essential elements of the offense. This factual resume is not intended to be a complete accounting of all the facts and events related to the offense charged in this case. The limited purpose of this statement of facts is to demonstrate that a factual basis exists to support the defendant's guilty plea to Count One of the superseding indictment.

Anthony Maestas Diaz
Factual Resume—Page 6

AGREED TO AND STIPULATED on this 29th day of June _____, 2026.

RYAN RAYBOULD
UNITED STATES ATTORNEY

X _____
Anthony Maestas Diaz
Defendant

_____
ANNA MARIE BELL
Assistant United States Attorney
New Mexico State Bar Number 12501
500 South Taylor Street, Suite 300
Amarillo, Texas 79101-2446
Tel:  806-324-2356
Fax:  806-324-2399
Email:  anna.bell@usdoj.gov

_____
David Sloan
Attorney for Defendant

Anthony Maestas Diaz
Factual Resume—Page 7